UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE ISOLAGEN, INC. SECURITIES AND DERIVATIVE LITIGATION<br><br>This Document Relates To: Civil Action No. 05-cv-04983-RB and Consolidated Class Actions | MDL No. 2:06-md-01741 |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
## <u>SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS</u>

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Steven B. Singer (*admitted pro hac vice*)
Jeremy P. Robinson
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

**KIRBY MCINERNEY LLP**
Ira M. Press (*admitted pro hac vice*)
825 Third Avenue, 16th Floor
New York, New York 10022
Tel.: (212) 371-6600
Fax: (212) 751-2450

**BARRACK, RODOS & BACINE**
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Lead Plaintiffs and the Class*

March 17, 2009

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 4

I.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .......... 4

    A.    The Law Favors And Encourages Settlements ........................................ 4

    B.    The Role Of The Court In Determining Whether To Approve A Class
        Action Settlement ..................................................................................... 4

    C.    The Standard For Approval Of Class Action Settlements ........................ 5

    D.    Application Of The *Girsh* Factors Supports Approval Of The Settlement ........... 6

        1.    Defendants' Inability To Withstand A Greater Judgment Supports
             Approval Of The Settlement .................................................................. 6

        2.    The Complexity, Expense And Likely Duration Of The Litigation
             Support Approval Of The Settlement ...................................................... 9

        3.    The Class's Reaction To The Settlement Supports Approval Of The
             Settlement ............................................................................................ 11

        4.    The Stage Of The Proceedings And The Amount Of Discovery
             Completed Support Approval Of The Settlement ..................................... 12

        5.    The Risks Of Establishing Liability Support Approval Of The
             Settlement ............................................................................................ 13

        6.    The Risks Of Establishing Damages Support Approval Of The
             Settlement ............................................................................................ 15

        7.    The Risks Of Maintaining The Class Action Through Trial
             Support Approval Of The Settlement ...................................................... 16

        8.    The Reasonableness Of The Settlement In Light Of The Best
             Possible Recovery And The Attendant Risks Of Litigation Support
             Approval Of The Settlement .................................................................. 16

    E.    Based On The *Girsh* Factors And The Totality Of The Circumstances, The
        Settlement Is Fair, Reasonable And Adequate ...................................... 18

II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE
     AND SHOULD BE APPROVED .............................................................. 19

III.    NOTICE TO THE CLASS SATISFIED DUE PROCESS REQUIREMENTS............... 20

CONCLUSION................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Austin v. Pa. Dep't of Corrs.*,
876 F. Supp. 1437 (E.D. Pa. 1995) ...................................................................5, 18

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993).................................................................................4, 5

*Bryan v. Pittsburgh Plate Glass Co.*,
494 F.2d 799 (3d Cir. 1974)..............................................................................4, 5

*City of Detroit v. Grinnell Corp.*,
356 F. Supp. 1380 (S.D.N.Y. 1972), *aff'd in part and rev'd in part*, 495 F.2d 448 (2d
Cir. 1974) .........................................................................................................7, 17

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D Pa. 2000)...................................................................5, 7, 8, 18

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................14

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995)..................................................................................4, 5

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)............................................................................................20

*Fickinger v. C.I. Planning Corp.*,
646 F. Supp. 622 (E.D. Pa. 1986) .......................................................................17

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)....................................................................5, 6, 16, 18

*In re Aetna Inc. Sec. Litig.*,
No. Civ.A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001)......................14, 15

*In re American Bus. Fin. Servs. Inc. Noteholder Litig.*,
No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ............................... *passim*

*In re Cell Pathways, Inc. Sec. Litig. II*,
No. 01-CV-1189, 2002 WL 31528573 (E.D. Pa. Sept. 23, 2002) ............................6, 8, 12, 18

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................ *passim*

*In re Cigna Corp. Sec. Litig.*,
  No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ...........................................4, 13, 15

*In re Cmty. Bank of N. Va.*,
  MDL No. 1674, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008) ............................................19

*In re Corel Corp. Sec. Litig*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003) ....................................................................6, 8, 14, 15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...................................7

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir.1995)..................................................................................... *passim*

*In re Genta Sec. Litig,.*
  No. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)............................................15

*In re GNC S'holder Litig.*,
  668 F. Supp. 450 (W.D. Pa. 1987) .........................................................................................13

*In re Greenwich Pharm. Sec. Litig.*,
  Civ. A. No. 92-3071, 1995 WL 251293 (E.D. Pa. April 26, 1995) ..................................15, 17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................................... *passim*

*In re Lucent Techs., Inc. Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004) ..................................................................................14, 20

*In re Luxottica Group S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................19

*In re Nat'l Student Mktg. Litig.*,
  68 F.R.D. 151 (D.D.C. 1974)....................................................................................................9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  246 F.3d 315 (3d Cir. 2001).....................................................................................................21

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
  148 F. 3d (3d Cir. 1998)........................................................................................... *passim*

*In re Ravisent Techs., Inc. Sec. Litig.*,
  No. Civ.A. 00-CV-1014, 2005 WL 906361 (E.D. Pa. April 18, 2005) .........................8, 9, 11

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. Civ. 03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ...........................................5

*In re Res. Am. Sec. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2001) ....................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ...........................................................17

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ..................................................................9

*In re SFBC Int'l Inc. Sec. & Derivative Litig.*,
  No. 08-2075, 2009 WL 353304 (3d Cir. Feb. 13, 2009) ..............................9

*In re Smithkline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) ...........................................12, 13, 14, 15

*In re Unisys Corp. Retiree Med. Benefits Litig.*,
  No. 969, 2003 WL 252106 (E.D. Pa. Feb, 4, 2003) ...................................16

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  512 F. Supp. 2d 279 (E.D. Pa. 2007) .................................................. *passim*

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)........................................................................4, 6

*Kline v. Sec. Guards, Inc.*,
  196 F.R.D. 261 (E.D. Pa. 2000)....................................................................16

*Lachance v. Harrington*,
  965 F. Supp. 630 (E.D. Pa. 1997) ............................................................5, 18

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).......................................................................4, 17

*Smith v. Dominion Bridge Corp.*,
  Civ.A. No. 96-7580, 2007 WL 1101272 (E.D. Pa. April 11, 2007) ............... *passim*

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990)...........................................................................12

*Walsh v. Great Atl. and Pac. Tea Co.*,
  96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983) ......................4, 5

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
  899 F. Supp. 1297 (D.N.J. 1995) .....................................................................5

## STATUTES/RULES

15 U.S.C. § 78u-4(b)(3)(B)..............................................................................12

15 U.S.C. § 78u-5 ...............................................................................................................14

Fed. R. Civ. P. 23 .....................................................................................................1, 16, 20

## INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court-appointed lead plaintiffs, Context Capital Management, LLC, Silverback Asset Management, LLC, Silverback Master Ltd., Silverback Life Sciences Master Fund, Ltd. and Michael McNulty ("Lead Plaintiffs"), on behalf of themselves and the Class,[1] respectfully submit this memorandum of law in support of their motion for: (a) final approval of the proposed settlement of this class action (the "Litigation"); and (b) final approval of the proposed Plan of Allocation of the Settlement proceeds.[2]

After over two and a half years of hard fought litigation and two full-day mediation sessions before the Hon. Nicholas H. Politan (ret.), former United States District Court Judge for the District of New Jersey, Lead Plaintiffs have achieved a significant settlement on behalf of the Class. Lead Plaintiffs reached an agreement with defendant Isolagen, Inc. ("Isolagen" or the

---

[1] In its Order Preliminarily Approving Settlement and Providing Notice dated November 12, 2008 (the "Preliminary Approval Order"), the Court certified for purposes of effectuating the Settlement, a class consisting of:

> all Persons or entities who purchased or otherwise acquired Isolagen common stock or 3.5% Convertible Subordinated Notes due November 1, 2024 during the period from March 3, 2004 to August 9, 2005, inclusive, and who sustained a loss as result of said acquisition(s). Excluded from the Settlement Class are Isolagen, the Individual Defendants, members of the immediate families of the Individual Defendants, the Underwriters, any entity in which any defendant has or had a controlling interest, directors and officers of Isolagen during the Class Period, the directors and officers of or partners in any of the Underwriters during the Class Period, and the legal representatives, heirs, successors, or assigns of any such excluded person. Also excluded from the Settlement Class are those Persons or entities who timely and validly request exclusion from the Settlement Class.

Preliminary Approval Order ¶2.

[2] The Plan of Allocation was set forth in the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), which has been mailed to potential Class Members pursuant to the Court's Preliminary Approval Order.

"Company") and the Individual Defendants[3] to settle this Litigation, subject to Court approval, for payment of $4,425,000 in cash (the "Settlement" or the "Settlement Amount"), in a situation where the main defendant, the Company, was teetering on the verge of bankruptcy and the limited Directors' & Officers' insurance coverage was already significantly depleted. The terms of Settlement are set forth in the Stipulation of Settlement dated October 23, 2008 (the "Stipulation"), which was previously submitted to the Court.[4]  The Court, in its Preliminary Approval Order, in addition to certifying the Class for Settlement purposes, among other things, preliminarily approved the Settlement and directed that notice of the proposed Settlement be given to the Class.

The Settlement is the result of arm's-length negotiations by the Court-appointed co-lead counsel for the Class ("Lead Counsel"), who are well informed as to the strengths and weaknesses of the Class's claims, and counsel for Defendants.  While the risks of the litigation, which were understood by Lead Plaintiffs were significant and reason enough to seek resolution of the Litigation through settlement,[5] it was Isolagen's precarious financial condition, which

---

[3] The Individual Defendants are: Frank L. DeLape, Michael Macaluso, Michael Avignon, Jeffrey W. Tomz, Robert J. Bitterman, Olga Marko, Martin E. Schmieg, William K. Boss, Jr., Steven Morrell, Henry Y.L. Toh, Ralph V. DeMartino and Marshall G. Webb.

[4] Unless otherwise noted capitalized terms shall have the meanings ascribed to them in the Stipulation.  The Stipulation provides for the settlement and release of all claims asserted in this Litigation against Isolagen and the Individual Defendants and against CIBC World Markets Corp., UBS Securities LLC, Legg Mason Wood Walker, Inc., Legg Mason, Inc., Citigroup, Inc., Citigroup Global Markets, Inc., and Canaccord Adams, Inc. (the "Underwriters").

The Settlement does not settle, and is not contingent on the settlement of, the derivative actions pending before the United States District Court in the Eastern District of Pennsylvania: *Richard Keene v. Frank M. DeLape, et al.* (C.A. No. H-05-2441) and *Ronald Beattie v. Michael Macaluso, et al.* (C.A. No. 08-724).

[5] The risks of the litigation are set forth in detail in the Joint Declaration of Steven B. Singer and Ira M. Press in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Application for an Award of Attorneys' Fees and

became apparent during the course of discovery on Lead Plaintiffs' motion for class certification, that led Lead Counsel to take the proactive step of proposing a stay of class discovery and referral of the case to Court-ordered mediation. Joint Decl. at ¶29.[6] Isolagen's financial condition has continued to deteriorate. Indeed, on March 9, 2009, Isolagen issued a press release in which it estimated that the Company has enough cash to keep operating for about three weeks and that if it could not raise funding soon it may enter into bankruptcy and possibly cease operations. Joint Decl. at ¶30. Had Lead Counsel not initiated mediation, the probability that the Class would not have recovered anything after trial and appeals, even if Lead Plaintiffs prevailed on liability and damages (neither of which was a certainty), was extremely high.

It is respectfully submitted that, in the face of the very real possibility of no recovery because of a bankrupt debtor and exhausted insurance policies, the $4,425,000 Settlement Amount is not only fair, reasonable and adequate, but it is an excellent recovery for the Class and merits the Court's approval.

---

Reimbursement of Litigation Expenses (the "Joint Declaration" or "Joint Decl. at ¶__") that is being submitted simultaneously herewith.

The Joint Declaration and the exhibits thereto are an integral part of this submission and the Court is respectfully referred to it for a detailed description of, *inter alia*, the history of the Litigation through the submission of the Settlement to the Court; the nature of the claims asserted in the Litigation; the investigation undertaken in the Litigation; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; the terms of the Plan of Allocation for the Settlement proceeds and the factors upon which that plan is based; and a description of the services Plaintiffs' Counsel provided for the benefit of the Class. The Joint Declaration also attaches the following supporting declarations/affidavits: (i) the Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (c) Report on Requests for Exclusion ("Fraga Aff.") (Exh. 1) and (ii) affidavits of the four Plaintiffs' Counsel's firms regarding their time and expenses (Exh. 2(a)-(d)). Lead Counsel are also filing contemporaneously herewith a Memorandum in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

[6] On March 31, 2008, the parties filed a stipulation agreeing to suspend litigation for 90 days while attempting to mediate a settlement. The stipulation was so ordered by the Court on April 1, 2008. Joint Decl. at ¶34.

**ARGUMENT**

I.    **THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

    A.    <u>The Law Favors And Encourages Settlements</u>

There is a strong judicial policy in this Circuit favoring resolution of disputed claims short of trial. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) ("[i]n general, the settlement of complex litigation before trial is favored by the federal courts"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993). In particular, "there is an overriding public interest in settling class action litigation." *In re Warfarin*, 391 F.3d at 535; *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *In re American Bus. Fin. Servs. Inc. Noteholder Litig.*, No. 05-232, 2008 WL 4974782 at *5 (E.D. Pa. Nov. 21, 2008). Settlement of complex class action litigation conserves substantial judicial resources, avoids the expense of prolonged litigation, and provides the prompt resolution of disputes that could otherwise linger for years. *See In re General Motors*, 55 F.3d at 784; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007); *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 284 (E.D. Pa. 2007).

    B.    **The Role Of The Court In Determining Whether**
           **To Approve A Class Action Settlement**

The issue before the Court is whether the proposed settlement is within a "range of reasonableness" that informed lead plaintiffs, advised by experienced attorneys, could accept in light of the relevant risks of the litigation. *In re General Motors*, 55 F.3d at 807; *see also Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974); *In re American Bus. Fin. Servs.*, 2008 WL 4974782, at *5; *Walsh v. Great Atl. and Pac. Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).

While the court must examine the fairness of a proposed settlement, it should recognize that a settlement by its very nature is a compromise and should avoid turning the fairness inquiry into a full-fledged trial on the merits. *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316-17 (3d Cir. 1998); *Bell Atl.*, 2 F.3d at 1315; *Bryan*, 494 F.2d at 801; *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03-0085 FSH, 2005 WL 3008808, at *4 (D.N.J. Nov. 9, 2005); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000); *Walsh*, 96 F.R.D. at 642.

In determining whether a given settlement is reasonable, the opinion of experienced counsel is entitled to considerable weight. *See, e.g., Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1300-01 (D.N.J. 1995) (settlement is the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D Pa. 2000); *In re Ikon*, 194 F.R.D. at 179; *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) (courts should "give credence to the estimation of the probability of success proffered by class counsel"); *Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1457 (E.D. Pa. 1995) (court will attribute significant weight to belief of experienced counsel that settlement is in best interest of class).

### C.    The Standard For Approval Of Class Action Settlements

The legal standard for reviewing a proposed settlement of a class action in the Third Circuit is whether the proposed settlement is "fair, reasonable and adequate." *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001); *In re Prudential*, 148 F.3d at 316; *In re General Motors*, 55 F.3d at 785; *Eichenholtz*, 52 F.3d at 482.   In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.

1975), the Third Circuit set out the following non-exhaustive factors for district courts to consider in determining whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation. . .; (2) the reaction of the class to the settlement. . . ; (3) the stage of the proceedings and the amount of discovery completed. . . ; (4) the risks of establishing liability. . . ; (5) the risks of establishing damages . . . : (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation . . . .

521 F.2d at 157 (citations omitted); *see also In re Warfarin*, 391 F.3d at 534-35; *In re Cendant*, 264 F.3d at 231-32; *In re Prudential*, 148 F.3d at 317; *In re General Motors*; 55 F.3d at 785. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair. Rather the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re American Bus.*, 2008 WL 4974782, at *5 (internal quotation and citations omitted).

**D.    Application Of The _Girsh_ Factors Supports Approval Of The Settlement**

As demonstrated below, each of the nine *Girsh* factors supports approval of the Settlement. Because the ability of Defendants to pay, *Girsh* factor number seven, is such an overarching concern in this case, it is addressed first.

**1.    Defendants' Inability To Withstand A Greater Judgment Supports Approval Of The Settlement**

Courts have noted that where there is a risk the defendant may not be able to pay a greater judgment obtained after trial; this factor assumes a paramount importance. *See In re Corel Corp. Sec. Litig*, 293 F. Supp. 2d 484, 489 (E.D. Pa. 2003) (defendants' inability to withstand a greater judgment was addressed first because it was the "dominant factor favoring settlement in this case"); *In re Cell Pathways, Inc. Sec. Litig. II*, No. 01-CV-1189, 2002 WL

31528573, at *4 (E.D. Pa. Sept. 23, 2002) (uncertainty about defendants' ability to pay a greater judgment was "the most important reason" for recommending settlement); *Cullen*, 197 F.R.D. at 144 (defendant's inability to withstand a greater judgment was "the dominant consideration favoring settlement in this case").

Here, the risk that the Class would not be able to recover more than, or even as much as, the Settlement Amount was, in fact, the dominant consideration. At the time of the mediation, Isolagen's common stock was trading at approximately 60 cents per share and, based on the Company's public filings, Isolagen was threatened with imminent bankruptcy. Joint Decl. at ¶¶4, 29-31. In the Company's 2007 Form 10-K, which was filed with the SEC on March 7, 2008, Isolagen represented that "there exists substantial doubt about our ability to continue as a going concern" and stated that, if the Company is unable to obtain additional funding prior to or during the third quarter of 2008, it "may enter into bankruptcy during 2008 and possibly cease operations thereafter." *Id.* at ¶30.

Whereas the dilemma often facing plaintiffs and the courts is whether a judgment significantly larger than the agreed-upon settlement amount, if obtained, could be satisfied or would it force the defendant into bankruptcy, a factor that strongly militates in favor of approval of a settlement;[7] here the risk was amplified -- would the Company (the Defendant that was likely to have been found most culpable if Lead Plaintiffs prevailed at trial), survive long enough to even go to trial. As set forth in the Joint Declaration, under the Case Management Order entered by the Court on November 7, 2007, discovery was bifurcated; class issues were to be

---

[7] *See, e.g., In re EVCI Career Colls. Holding Corp. Sec. Litig.,* No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007) ("The risk that a successful prosecution will result in the bankruptcy of the defendant strongly weighs in favor of approval of a settlement."); *City of Detroit v. Grinnell Corp.,* 356 F. Supp. 1380, 1389 (S.D.N.Y. 1972), *aff'd in part and rev'd in part,* 495 F.2d 448 (2d Cir. 1974) (the "prospect of a bankrupt judgment debtor at the end of the road does not satisfy anyone involved in the use of class action procedures").

litigated prior to commencing merits and other discovery. Joint Decl. at ¶21. As of June 2, 2008, when the parties entered mediation, merits discovery had not yet begun. *Id.* at ¶22. Many months, if not years, of continuing litigation faced the parties before the case would even be trial ready and then appeals would have to be resolved before the possibility of a recovery could be realized by the Class. While Isolagen has not filed for bankruptcy to date, as noted above, (i) in March 2008, it acknowledged that it might file for bankruptcy or cease operations in 2008; (ii) its stock currently trades at about 20 cents per share: and (iii) just days ago, Isolagen issued a press release stating that the Company estimates that it has enough cash to keep operating for about three weeks and that if it could not raise funding soon it may enter into bankruptcy and possibly cease operations. *Id.* at ¶¶4, 30. These circumstances provide strong support for approval of the Settlement.[8] *See In re American Bus.*, 2008 WL 4974782, at *8; *Smith v. Dominion Bridge Corp.*, Civ.A. No. 96-7580, 2007 WL 1101272, at *6 (E.D. Pa. April 11, 2007); *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A. 00-CV-1014, 2005 WL 906361, at *9 (E.D. Pa. April 18, 2005); *In re Corel*, 293 F. Supp. 2d at 489; *In re Cell Pathways*, 2002 WL 31528573, at *4; *Cullen*, 197 F.R.D. at 144.

The need to reach a settlement in this Litigation as soon as possible was further underscored by the fact that the limited insurance proceeds available to fund a settlement were being depleted by the costs of litigation. Joint Decl. at ¶31. Had an agreement to settle not been reached, the vast majority, if not all, of the available insurance would have been spent in defense

---

[8] In this Litigation, there was not the possibility of a significant recovery from other Defendants. As of the date the parties entered mediation, the claims against five of the seven Underwriter Defendants had been dismissed and the remaining claim, at best could yield limited damages even if Lead Plaintiffs prevailed with respect to liability and damages. *See* Joint Decl. at ¶20 n.7. As discussed below, while Lead Plaintiffs believe in the merits of their claims, establishing both liability and damages would entail "battles of the experts" which invariably pose significant risk as to whose experts the jury will believe.

of the action. *See In re SFBC Int'l Inc. Sec. & Derivative. Litig.*, No. 08-2075, 2009 WL 353304, at *1 (3d Cir. Feb. 13, 2009) (affirming district court's conclusion that it was "appropriate . . . to settle the case early while there were still substantial insurance proceeds which were available to the settlement"); *In re American Bus. Fin. Servs.*, 2008 WL 4974782, at *8 (approving settlement where "[c]ontinuing to trial in the hopes of obtaining a higher penalty would merely deplete the insurance policy proceeds . . . leaving the class, if successful, with a lesser judgment, not a greater one."); *In re Ravisent*, 2005 WL 906361, at *9; *In re Safety Components, Ins. Sec. Litig.*, 166 F. Supp. 2d 72, 88 (D.N.J. 2001).

Notwithstanding these strong pressures in support of resolution of the action, it took two full days of mediation under the auspices of Judge Politan, a highly respected mediator with extensive experience in the mediation of complex securities class actions, before Lead Plaintiffs and Lead Counsel were satisfied with the terms of the proposed settlement and would agree to settle. The Settlement Amount, which represents 60% of the Company's total current market capitalization (Joint Decl. at ¶¶4, 30), is an excellent result for the Class.

### 2. The Complexity, Expense And Likely Duration Of The Litigation Support Approval Of The Settlement

There is no doubt that this securities class action involves complex factual and legal issues. As discussed in the Joint Declaration filed herewith, the various obstacles confronting the Class would necessarily "flow from the complexities and difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon*, 194 F.R.D. at 194.

This complex litigation has been vigorously litigated. As set forth in the Joint Declaration, Lead Counsel, among other things: (i) interviewed numerous former Isolagen

employees in the United States and the United Kingdom, after identifying and contacting or attempting to contact hundreds of former employees and other witnesses; (ii) retained and consulted with experts in market efficiency and damages; (iii) reviewed all publicly available information concerning Isolagen, including statements made by the Company and the Individual Defendants in the Company's filings with the SEC, press releases, conference calls, news articles and analysts' reports; (iv) researched the law pertinent to the claims against Defendants and potential defenses thereto; (v) successfully opposed Defendants' motions to dismiss the Complaint and the Underwriter Defendants' motion for reconsideration; and (vi) moved for class certification, and in connection with that motion, Lead Plaintiffs responded to 107 document requests, 39 multi-part interrogatories and 13 requests for admission served on them by Defendants which included the production of thousands of pages of documents, and prepared for the multiple depositions noticed by Defendants. *See* Joint Decl. at ¶¶17-21.

Because of the Court's Order bifurcating discovery, merits discovery has not yet begun. *See* Joint Decl. at ¶22. Given the complexity of the issues (*see id.* at ¶¶11-13, 24-28), it is anticipated that millions of pages of documents, including highly technical scientific documents including medical research and studies relating to the development and efficacy of the Isolagen Process and the FDA approval process, would be produced, significant additional expert analysis would be required, and numerous fact and expert witness depositions would have to be taken.

As evidenced by the motions to dismiss and the very aggressive opposition to Lead Plaintiffs' motion for class certification, Defendants were and are represented by extremely capable counsel who are familiar with the defense of complex securities class actions such as this case adding to the complexity and expense of continued prosecution. *See* Joint Decl. at ¶¶21, 55. Lead Plaintiffs expect that if the Litigation were to continue, in addition to the considerable and

costly fact and expert discovery that would be necessary, they would face motions for summary judgment, trial would undoubtedly require several weeks, and involve the introduction of hundreds of exhibits, multiple experts testifying about complex issues, and *in limine* motions. Whatever the outcome of an eventual trial, it is virtually certain that appeals would be taken. All of the foregoing would delay the ability of the Class to recover -- assuming, of course (i) that Lead Plaintiffs were ultimately successful on their claims, and (ii) that there were funds at that time to satisfy a judgment (*see* Point I.D.1. above).

It is apparent that the "probable costs, in both time and money, of continued litigation" would be very high and, thus, this factor strongly weighs in favor of the Settlement. *In re General Motors*, 55 F.3d at 812 (internal quotation marks and citation omitted); *see also In re American Bus. Fin. Servs.*, 2008 WL 4974782, at *6; *In re Ravisent*, 2005 WL 906361, at *7; *In re Ikon*, 194 F.R.D. at 179. The scientific nature of the facts underlying the claims in this case make it more complicated (and more expensive to litigate) than the average securities fraud class action. *See In re Vicuron Pharms.*, 512 F. Supp. 2d at 284-85 (noting the special complexity of a case where "[d]efendants allegedly made false or misleading statements about a drug they were testing that artificially boosted the price of the stock of the defendant corporation."). Settlement at this juncture unequivocally avoids substantial, continued and uncertain litigation through further discovery, summary judgment, a protracted trial, and post-trial proceedings.

**3.    The Class's Reaction To The Settlement Supports Approval Of The Settlement**

The date for Class Members to file requests to be excluded from the Class or objections to the proposed Settlement was March 3, 2009. Pursuant to the Preliminary Approval Order, more than 12,400 Notices have been mailed to potential Class Members and a Summary Notice of the proposed Settlement was published on January 14, 2009 in *Investor's Business Daily*.

Fraga Aff. at ¶¶5-6 (attached to Joint Decl. as Exh. 1). To date, <u>not a single objection or request for exclusion has been received</u>. *See* Joint Decl. at ¶¶7, 43; Fraga Aff. at ¶9.

The fact that the Class's reaction to the Settlement is overwhelmingly and universally positive is strong evidence that the Settlement is fair, adequate, and in the best interests of the Class. *See In re Cendant*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption . . . in favor of the Settlement . . ."); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990); *In re Vicuron Pharms.*, 512 F. Supp. 2d at 285 n.2; *Dominion Bridge Corp.*, 2007 WL 1101272, at *4; *In re Cell Pathways,* 2002 WL 31528573, at *5; *In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990).

### 4.    The Stage Of The Proceedings And The Amount Of Discovery Completed Support Approval Of The Settlement

This Settlement was reached after the Court had ruled on and denied Defendants' motions to dismiss and after the parties conducted extensive discovery on the issue of class certification. However, due to the discovery stay required by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B), and the Court's Case Management Order, ordering that class issues be litigated prior to commencing merits discovery, formal discovery on the merits of Lead Plaintiffs' claims against Defendants had not commenced at the time the settlement was reached.

Notwithstanding the lack of formal discovery, as set forth in the Joint Declaration (*see* ¶¶17-22) and above (*see* pp. 9-10), Lead Counsel has conducted an extensive investigation into the claims and the underlying events and transactions alleged in the Complaint, including conducting interviews with certain doctors in the United Kingdom who administered the Isolagen Process and interviewing numerous former Isolagen employees in the United States and the United Kingdom. Joint Decl. at ¶¶17, 22. Lead Counsel was also able to obtain court

documents that had been filed in a lawsuit involving the company Isolagen hired to design the ACE system, which shed light on Defendants' public statements about the progress and development of the ACE system.  Joint Decl. at ¶22.  Lead Counsel analyzed the evidence adduced during their investigation, reviewed extensive publicly available information about Isolagen, researched the applicable law with respect to the claims of Lead Plaintiffs and the Class, consulted with market efficiency and damages experts, and prepared a detailed mediation statement setting forth the relative strengths and weaknesses of their case.  Joint Decl. at ¶¶17, 22, 35.  Consequently, despite the relatively early procedural posture of this case, Lead Counsel have gathered sufficient information to make an informed judgment about the strengths and risks of their claims and the Defendants' defenses.  *In re Prudential*, 148 F.3d at 319 (class counsel's use of informal discovery was appropriate where plaintiffs' right to formal discovery was stayed for many months and the informal discovery provided the information plaintiffs needed to appreciate the potential merits of the case); *see also In re Cendant*, 264 F.3d at 235-36.

5. **The Risks Of Establishing Liability Support Approval Of The Settlement**

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of recovery, against the risks of establishing liability and damages through litigation.  *In re Prudential*, 148 F.3d at 319; *Dominion Bridge*, 2007 WL 1101272, at *5.  Lead Counsel believe that Lead Plaintiffs and the Class had a reasonably strong liability case against Defendants.  Nevertheless, they recognize that a finding of liability is by no means certain in a complex securities case such as this one.  *See In re Cigna*, 2007 WL 2071898, at *3; *In re Vicuron Pharms.*, 512 F. Supp. 2d at 284-85; *In re Smithkline Beckman*, 751 F. Supp. at 529; *In re GNC S'holder Litig.*, 668 F. Supp. 450, 451 (W.D. Pa. 1987).

The central allegation in the Complaint is that Defendants misled investors about the effectiveness of the Isolagen Process and that, as a result, Defendants materially misstated the Company's financial condition.  Lead Plaintiffs would have had the burden of proving that Defendants' public statements about the Isolagen Process were actionably false or misleading. Defendants have strenuously denied that these statements were false, and have argued that all alleged misstatements identified by Lead Plaintiffs were either true or were protected forward-looking statements.  In this case, proving that Defendants' statements were false at trial would have been complicated by the fact that a number of the statements, such as those concerning the effectiveness of the Isolagen Process, could be subject to the conflicting interpretation of experts or statistical analyses.  *See In re Vicuron Pharms.*, 512 F. Supp. 2d at 285.  Moreover, if Defendants could persuade the jury that the statements in question were forward-looking (and thus protected by the PSLRA safe harbor, 15 U.S.C. § 78u-5), Plaintiffs would be required to prove that Defendants knew the statements were false at the time they were made.  *In re Vicuron Pharms.*, 512 F. Supp. 2d at 285.

As in any securities class action under the PSLRA, Lead Plaintiffs faced a high burden in demonstrating that Defendants acted with *scienter*, or intent to defraud.  The uncertainty attendant to establishing *scienter*, further supports the reasonableness of the Settlement.  *See Dominion Bridge*, 2007 WL 1101272, at *5; *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004); *In re Corel*, 293 F. Supp. 2d at 492; *In re Aetna Inc. Sec. Litig.*, No. Civ.A. MDL 1219, 2001 WL 20928, at *9 (E.D. Pa. Jan. 4, 2001); *In re Ikon*, 194 F.R.D. at 181-82; *In re Smithkline Beckman*, 751 F. Supp. at 529.

Finally, Plaintiffs would have the burden of proving loss causation.  Under the Supreme Court's Decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 344-46 (2005),

Plaintiffs must prove that the price Class Members paid for the Isolagen Securities was artificially inflated on the date of purchase and that subsequent drops in value of the Isolagen Securities were proximately caused by disclosures related to the alleged fraud. If the Litigation had proceeded, Defendants would have argued that there was no stock price drop attributable to the Company's revelations regarding the alleged fraud with respect to the Isolagen Process. While Lead Plaintiffs would attempt to prove that each of the drops was attributable to the alleged fraud, proving loss causation, which would be another issue to be addressed by experts, could have been difficult for Lead Plaintiffs at summary judgment and at trial. *See In re Cigna*, 2007 WL 2071898, at *3; *Dominion Bridge*, 2007 WL 1101272, at *5.

6.    **The Risks Of Establishing Damages Support Approval Of The Settlement**

Even if Lead Plaintiffs succeeded in establishing liability, they would face the significant risks inherent in proving and quantifying the damages suffered by the Class in this case. In a Section 10(b) action, plaintiffs must prove the amount of damages based on "out-of-pocket" loss of plaintiffs, which is measured by the difference between the fair value of what the plaintiff received and what would have been received if there was no fraudulent conduct. *See In re Aetna*, 2001 WL 20928, at *10; *In re Greenwich Pharm. Sec. Litig.*, Civ. A. No. 92-3071, 1995 WL 251293, at *4 (E.D. Pa. April 26, 1995). The question whether Class Members suffered damages because of Defendants' misrepresentations, as opposed to external market conditions or other factors, would be the subject of sharp disagreement among the parties' respective experts. The reaction of a jury to such complex expert testimony is highly unpredictable. *See In re Cendant*, 264 F.3d at 239; *In re Genta Sec. Litig,*. No. 04-2123 (JAG), 2008 WL 2229843, at *7 (D.N.J. May 28, 2008); *Dominion Bridge*, 2007 WL 1101272, at *5; *In re Corel*, 293 F. Supp. 2d at 492; *In re Greenwich*, 1995 WL 251293, at *4; *In re Smithkline Beckman*, 751 F. Supp. at

529-30.  While Lead Plaintiffs' damages expert would have opined on the measure of damages based on economic and legal theory that could withstand scrutiny, Defendants would have presented their own damages experts, with conflicting conclusions and theories.  Ultimately, proving damages would come down to a "battle of the experts," and it is impossible to predict which expert and theory of damages the jury would accept.  This unpredictability is avoided by the proposed Settlement.

7.   **The Risks Of Maintaining The Class Action Through Trial Support Approval Of The Settlement**

Lead Plaintiffs believe that this case is appropriate for class treatment and would continue to be so through trial.  However, at the time Settlement was reached the class had not yet been certified.  Moreover, the federal rules permit the class determination to be reviewed and modified at any time before trial.  *See* Fed. R. Civ. P. 23(c)(1); *In re Unisys Corp. Retiree Med. Benefits Litig.*, No. 969, 2003 WL 252106, at *2 (E.D. Pa. Feb. 4, 2003) (court is required to reassess the class ruling as the case develops and define, redefine, subclass and decertify as appropriate in response to the progression of the case); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 186 (E.D. Pa. 2001); *Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261, 271 (E.D. Pa. 2000).  Thus, there always remains a risk that this action may not have been able to be maintained on a class basis through trial.  Approval of the settlement obviates this risk.

8.   **The Reasonableness Of The Settlement In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation Support Approval Of The Settlement**

This *Girsh* factor coupled with Defendants' inability to withstand a greater judgment (*Girsh* factor discussed at pp. 6-9 above), are used to evaluate whether the settlement represents a good value for a relatively weak case or poor value for a strong case.  The reasonableness of the settlement is considered in light of the best possible recovery and the risks the parties would

face if the case went to trial. *In re Prudential*, 148 F.3d at 322; *In re General Motors*, 55 F.3d at 806.     As set forth above, the reality here is that, if the Litigation were to continue and even if Lead Plaintiffs prevailed at trial and on appeal, there would very likely be no recovery at the end of the road because of Isolagen's precarious financial condition.    That factor alone supports approval of the Settlement.    However, notwithstanding the extraordinary circumstances that severely limited the amount that could be recovered, the Settlement Amount itself falls within the range of recoveries that have been approved even without the exigencies present here.

Courts in this Circuit uniformly recognize that settlements in the range of the recovery here are fair, reasonable and adequate. *See In re Cendant*, 264 F.3d at 241 (typical recoveries in securities cases range from 1.6% to 14%); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing a study showing that recent settlements of securities class actions "have recovered between 5.5% and 6.2% of the class members' estimated losses" and approving a settlement representing 9.65%); *In re Ikon*, 194 F.R.D. at 183-84 (approving settlement that obtained 5.2% of the best possible recovery for purchasers of common stock); *In re Greenwich*, 1995 WL 251293, at *4-*5 (approving settlement that obtained 4.4% of estimated maximum damages).   Instead, the range of possible recovery must be juxtaposed against the likelihood of success in the litigation and is not reducible to a simple mathematical equation yielding a particularized sum. *See In re Prudential*, 148 F.3d at 322-23; *Newman*, 464 F.2d at 693; *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).    As the Court in *Dominion Bridge* explained, the "fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of the strengths of the claims."  2007 WL 1101272, at *6 (quoting In *re Ikon*, 194 F.R.D. at 183-84); *see also City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). The fairness, reasonableness and adequacy of the Settlement achieved here is underscored by the serious ability to pay issues present in this Litigation. *See* pp.6-9 above.

The Settlement allows the Class to avoid the risks described above, and ensures a substantial and immediate payment to those members of the Class who submit valid claims. The Settlement represents a substantial cash payment that is clearly preferable to the very real possibility of no recovery at all under the circumstances of this case. *See Dominion Bridge*, 2007 WL 1101272, at *6 (size of proposed settlement in relation to most optimistic potential recovery is less relevant where defendant's dire financial situation would preclude a larger judgment); *In re Cell Pathways*, 2002 WL 31528573, at *6-*7 (same). The Settlement is within the range of reasonableness and should be approved.

**E.    Based On The *Girsh* Factors And The Totality Of The Circumstances, The Settlement Is Fair, Reasonable And Adequate**

The *Girsh* factors do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement. *In re Prudential*, 148 F.3d at 323; *In re American Bus. Fin. Servs.*, 2008 WL 4974782, at *5.

In determining whether a given settlement is reasonable, the opinion of experienced counsel is also entitled to considerable weight. *Dominion Bridge*, 2007 WL 1101272, at *6; *Cullen*, 197 F.R.D. at 145; *In re Ikon*, 194 F.R.D. at 179; *Lachance*, 965 F. Supp. at 638 (courts should "give credence to the estimation of the probability of success proffered by class counsel"); *Austin*, 876 F. Supp. at 1457 (court will attribute significant weight to belief of experienced counsel that settlement is in best interest of class). Lead Counsel believe that the

Settlement represents an excellent result for the Class, in light of the litigation risks discussed above and the Company's precarious financial condition at the time of settlement.

In addition, this Settlement was only achieved after two full-day mediation sessions before the Honorable Nicholas H. Politan, a retired United States District Court Judge who has significant experience in mediating complicated securities class actions. Joint Decl. at ¶¶4, 35. The fact that the Settlement was achieved after extensive arms'-length negotiations between experienced counsel and that these negotiations were conducted with the assistance of a respected mediator, strongly supports the fairness and reasonableness of the agreed settlement. *See In re Cmty. Bank of N. Va.*, MDL No. 1674, 2008 WL 3833271, at *11 (W.D. Pa. Aug. 15, 2008); *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006).

After fully exploring the strengths and weaknesses of Lead Plaintiffs' case and the risks of continued litigation, Lead Counsel firmly believe that the Settlement is the best possible outcome for the Class, is well within the required "range of reasonableness", and should be approved.

## II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

Approval of a plan of allocation in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution must be fair, reasonable and adequate.    *See Dominion Bridge*, 2007 WL 1101272, at *7; *In re Ikon*, 194 F.R.D. at 184. "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.*

Lead Counsel developed the Plan of Allocation in close consultation with Lead Plaintiffs' damages expert and believe that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Class Members.    Joint Decl. at ¶¶46-47.

The proposed plan determines payments to claimants based on calculation of each claimant's Recognized Loss Amount, which depends on several factors including when the claimant purchased and sold Isolagen Securities and whether the Isolagen Securities were held over any of the alleged corrective disclosures during the Class Period. Joint Decl. at ¶48. Based on guidance from Lead Plaintiffs' damages expert, this plan attempts to allocate payment on a *pro rata* basis based on the relative size of each claimant's loss due to Defendants' alleged misstatements. As such, the plan of allocation is entirely consistent with plans that have been approved by other courts in this District and elsewhere. *See In re American Bus. Fin. Servs.*, 2008 WL 4974782, at *9; *Dominion Bridge*, 2007 WL 1101272, at *7; *In re Lucent Techs.*, 307 F. Supp. 2d at 648-49; *In re Ikon*, 194 F.R.D. at 184 (plan was reasonable where claimants were reimbursed at various percentages for their defined losses based largely on when they bought and sold stock).

Lead Counsel believe that the Plan of Allocation is a fair and reasonable way to apportion the Settlement. Moreover, as noted previously, no Class Member has raised any objection to the Plan of Allocation, which is a further supporting factor for the Court's approval of the proposed Plan of Allocation.

## III. NOTICE TO THE CLASS SATISFIED DUE PROCESS REQUIREMENTS

In accordance with the Preliminary Approval Order, The Garden City Group, Inc. caused the Court-approved Notice and Proof of Claim forms to be mailed by first class mail, postage prepaid to 12,492 potential Class Members. Fraga Aff. at ¶¶3-5. On January 14, 2009, the Court-approved Summary Notice was published in *Investor's Business Daily. Id.* at ¶6. The notice program meets the requirements of Rule 23 of the Federal Rules of Civil Procedure which calls for the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*,

417 U.S. 156, 173 (1974) (emphasis omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*,

246 F.3d 315, 327 n.11 (3d Cir. 2001). As these cases require, the Class has been given notice of

the proposed settlement and plan of allocation, as well as the rights of Class Members, and the

method and dates by which they can object to, or opt-out of, the Settlement.  Further, the Class

had been advised of the date of the final fairness hearing at which time they will have an

opportunity to be heard with respect to any objection raised.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve

the proposed Settlement as fair, reasonable and adequate; approve the Plan of Allocation as fair

and reasonable; and enter the accompanying proposed Final Judgment submitted as an exhibit to

Lead Plaintiffs' Motion.

Dated:  New York, New York                         Respectfully submitted,
        March 17, 2009


**BERNSTEIN LITOWITZ BERGER**                   **KIRBY MCINERNEY LLP**
  **& GROSSMANN LLP**                           Ira M. Press (*admitted pro hac vice*)
Steven B. Singer (*admitted pro hac vice*)      825 Third Avenue, 16th Floor
Jeremy P. Robinson                              New York, New York 10022
1285 Avenue of the Americas, 38th Floor         Tel.: (212) 371-6600
New York, New York 10019                        Fax: (212) 751-2450
Tel: (212) 554-1400
Fax: (212) 554-1444


**BARRACK, RODOS & BACINE**


By: /s/  Jeffrey W. Golan
    Jeffrey W. Golan
    3300 Two Commerce Square
    2001 Market Street
    Philadelphia, Pennsylvania 19103
    Tel.: (215) 963-0600
    Fax: (215) 963-0838

#353131.4

21